# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------------x
                                              :
COMMONWEALTH OF MASSACHUSETTS,                :
                                              :
                    Plaintiff,                :
                                              :
            v.                                :
                                              :
VOLKSWAGEN AG; AUDI AG;                        :
VOLKSWAGEN GROUP OF AMERICA,                   :     No. _____
INC.; DR. ING. H.C. F. PORSCHE AG, d/b/a,      :
PORSCHE AG; and PORSCHE CARS NORTH             :
AMERICA, INC.,                                 :
                                              :
                    Defendants.               :
                                              :
                                              :
                                              :
                                              :
                                              :
                                              :
                                              :
                                              :
------------------------------------------------------------x
```

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446, defendants Volkswagen AG ("VWAG"), Audi AG ("Audi AG"),  Volkswagen Group of America, Inc. ("VWGoA"), Dr. Ing. h.c. F. Porsche AG ("Porsche AG"), and Porsche Cars North America, Inc. ("PCNA")  (together, "Defendants") hereby notice the removal of this civil action brought by the Commonwealth of Massachusetts from the Superior Court of the Commonwealth of Massachusetts, Suffolk County, to the United States District Court for the District of Massachusetts.  The action being removed is titled *Commonwealth of Massachusetts* v. *Volkswagen AG*, Civil Action No. 16-2266D (Mass. Sup. Ct. Suffolk County) (the "Action").  Removal to the District of Massachusetts is proper because it is the District within which the Action was filed.  *See* 28 U.S.C. § 1446(a).

This Court has subject matter jurisdiction—and this matter is therefore removable—because the Commonwealth raises claims and a right to relief that depend upon the resolution of disputed and substantial questions of federal law, including novel questions under the federal Clean Air Act ("CAA") and the regulatory scheme promulgated thereunder by the United States Environmental Protection Agency ("EPA").  *See* 28 U.S.C. §§ 1331, 1441(a); *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005) (action to quiet title under state law "warrant[ed] federal jurisdiction" where "the meaning of [a] federal [notice] statute [was] actually in dispute").

That the complaint raises substantial and disputed issues of federal law with national import is reflected by the Judicial Panel on Multidistrict Litigation's (the "JPML") transfer to the Honorable Charles Breyer in the U.S. District Court for the Northern District of California (the "MDL") of more than 1,100 cases filed against many of the same defendants as here, alleging similar or overlapping claims, based on the same underlying alleged facts.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 148 F. Supp. 3d 1367 (J.P.M.L. 2015).  These cases include claims under the CAA asserted by the United States Department of Justice (on behalf of the EPA); claims asserted by the States of California, Kentucky, and New Mexico under their state environmental and consumer-protection laws; claims asserted by other federal and state governmental parties; and claims of numerous private parties asserting claims under a variety of federal and state laws.  Concurrent with filing this Notice of Removal, Defendants are filing a request with the United States Judicial Panel on Multidistrict Litigation to transfer this action to the MDL so that this action may be adjudicated with the many similar cases pending in the MDL, in order to "promote the just and efficient conduct of the litigation,"

including by "eliminat[ing] duplicative discovery, avoid[ing] inconsistent rulings . . . , and conserv[ing] the resources of the parties, their counsel and the judiciary." *Id.* at 1368-69.

At the heart of the Action are legal questions concerning compliance with emissions standards for new motor vehicles—a matter declared by the CAA to be an exclusively federal concern, with the exception of California and states that enact emissions regimes "*identical*" to California's.  42 U.S.C. § 7507.  In particular, the Action concerns the existence and implications of "defeat devices"—a term defined *only* by EPA regulation and *not* by any state regulation—in certain diesel vehicles, which allegedly caused those vehicles to pass emissions tests but to emit excessive nitrogen oxides and other pollutants while in normal vehicle operation and use.  In this Action, Plaintiff seeks to disrupt the federal statutory scheme by demanding penalties under Massachusetts environmental laws for manufacturing and selling vehicles that were allegedly fitted with *federally* regulated "defeat devices."[1]  Importantly, these Massachusetts penalties (up to $25,000 per day) far exceed those permissible under California law ($5,000 per violation)— the only state the EPA has authorized to adopt and enforce its own vehicle emission standards, *see* 42 U.S.C. § 7543(b).  Similarly, the complaint seeks broad injunctive relief (such as an order requiring Defendants to "submit to a third-party monitor") that could result in giving the Commonwealth the power to tell Defendants how to design their vehicles—all in violation of the federal CAA, which explicitly provides that no state other than California shall "take any action of any kind to create, or have the effect of creating, a motor vehicle or motor vehicle engine

---

[1]    Federal regulations define a "defeat device" as "an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, unless:  (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles[.]"  40 C.F.R. § 86.1803-01.

different than a new motor vehicle or engine certified in California under California standards."
*Id.* at § 7507.

The Action presents several federal questions, any one of which is sufficient to convey federal question subject matter jurisdiction:   (1) whether the Commonwealth's emissions standards and enforcement procedures (including penalties) are "identical" to California's, as required by Section 177 of the CAA; (2) whether the injunctive relief sought by Plaintiff, including the appointment of a monitor, is permissible under Section 177 of the CAA; and (3) to the extent Defendants' vehicles contained "defeat devices," as defined by federal law and made unlawful by the California regulations expressly approved by the EPA, the legal consequences to Defendants for the existence of such devices in their vehicles.

These substantial federal questions are highly novel, and it is therefore imperative that they are litigated in federal court.   Indeed, the Action—and several other actions filed by Maryland, New York, and Pennsylvania (together with the Commonwealth, the "States") around the same time based on substantially the same allegations (together with the Action, the "State Actions")—collectively represent one of the first instances—if not the first instance—in which any state other than California has brought suit and sought monetary penalties and injunctive relief based expressly on alleged violations of state emissions standards for new motor vehicles.

Moreover, this action should be transferred to Judge Breyer of the Northern District of California along with more than 1,100 lawsuits, including suits brought by the Attorneys General of California, Kentucky, and New Mexico, relating to the same nucleus of operative fact that are already in federal court.   To that end, Defendants, the Commonwealth, and the other States have reached an agreement under which Defendants will remove the State Actions to federal court and the States will not object to the transfer of the State Actions to the MDL for centralized

adjudication of the issue of removal, which will involve similar inquiries in each of the State Actions.

## I.      BACKGROUND

### A.      PARTIES

The named Plaintiff is the Commonwealth of Massachusetts.  (Compl. ¶¶ 15, 17.)

VWGoA is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  VWGoA is a wholly owned subsidiary of VWAG.

VWAG is a German corporation with its principal place of business in Wolfsburg, Germany.  VWAG is the direct parent corporation of VWGoA and Audi AG, and the indirect parent corporation of Porsche AG.

Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany.

PCNA is a Delaware corporation with its principal place of business located at 1 Porsche Drive, Atlanta, Georgia 30354.  PCNA is an indirect wholly owned subsidiary of Porsche AG.

Porsche AG is a German corporation with its principal place of business in Stuttgart, Germany.  Porsche AG is the parent of PCNA and is an indirect, wholly owned subsidiary of VWAG.

The Defendants filing this notice of removal do so without waiving any defenses, including as to personal jurisdiction.  *See*, *e.g.*, *Morris & Co.* v. *Skandinavia Ins. Co.*, 279 U.S. 405, 409 (1929) (rejecting argument that "by removal of the case to the federal court, objection to jurisdiction over the person of respondent was waived");  *Cantor Fitzgerald, L.P.* v. *Peaslee*, 88 F.3d 152, 157 n.4 (2d Cir. 1996) (rejecting argument that removal waived personal-jurisdiction objection, because "[r]emoval does not waive any Rule 12(b) defenses"); *see also* 5C

Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1395 (3d ed. 2015) ("A party who removes an action from a state to federal court does not thereby waive any of his or her Federal 12(b) defenses or objections.").

      **B.**    **PROCEDURAL HISTORY**

On July 19, 2016, Plaintiff filed this action in the Superior Court of the Commonwealth of Massachusetts, Suffolk County, bearing civil action number 16-2266D. The Complaint names five defendants: VWAG, Audi AG, VWGoA, Porsche AG, and PCNA.

Defendants VWGoA and PCNA were served with the Complaint on July 26, 2016. Defendants VWAG, Audi AG, and Porsche AG were served with the Complaint on August 11, 2016. This notice of removal is being filed on August 18, 2016, which is less than 30 days after any of those Defendants was served. As a result, this notice of removal is timely filed. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347-48 (1999) ("[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

Copies of the state-court docket sheet and the pleadings in this Action are attached hereto as Exhibits A-C. Other than the documents attached as Exhibits A-C, no pleadings, process, orders, or other documents in the case have been served on Defendants or, to their knowledge, are presently on file in the state court. Should such filings come to Defendants' attention, true and legible copies will promptly be filed with this Court.

Defendants are serving written notification of this Notice of Removal on Plaintiff's counsel and are filing a Notice of Removal (attaching a copy of this Notice of Removal) with the Clerk of the Superior Court of the Commonwealth of Massachusetts, Suffolk County.

C.       **PLAINTIFF'S CLAIMS**

This Action is based upon allegations concerning widely publicized Notices of Violation issued by the EPA on September 18, 2015 and November 2, 2015.  These EPA Notices alleged installation of emissions-testing "defeat devices" in certain diesel vehicles sold by Defendants. "Defeat devices" are defined by federal law (and only federal law) as devices that "reduce[] the effectiveness of the emissions control system under conditions that may reasonably be expected to be encountered in normal vehicle operation and use."   40 C.F.R. § 86.1803-01.   The Complaint uses the term "defeat device" more than 100 times, and contends that Volkswagen "defrauded . . . state and federal regulators" by deploying the "defeat devices."  (Compl. ¶ 2). Tellingly, the cited Massachusetts regulations do not mention "defeat devices," but merely incorporate and cross-reference California regulations.  (*See* Compl. ¶ 237 ("The MA LEV Regulations, through their incorporation of the CA LEV Regulations prohibit the use of defeat devices in any new light-duty vehicle and certain other vehicles.").)  Those California standards likewise do not define "defeat devices."   The term "defeat device" is a term defined solely by federal law.

The Complaint alleges that Defendants' conduct was broadly directed toward the U.S. automotive market—of which the Commonwealth is but a small fraction.  For example, Plaintiff contends that vehicles with "defeat devices" were "designed . . . for sale within the U.S., including within the Commonwealth," that applications were submitted to "U.S. regulators . . . for certification to sell the Subject Vehicles in the U.S., including within the Commonwealth," that "periodic submissions and certifications regarding the Subject Vehicles' compliance with applicable emissions standards and requirements" were made to "U.S. regulators, including the [Commonwealth of Massachusetts Department of Environmental Protection]," and that such vehicles were marketed to "U.S. consumers, including in the Commonwealth."  (Compl. ¶ 30;

*see also, id.* ¶ 172 ("Volkswagen's certifications to state and federal environmental regulators . . . were false . . . ."); *id.* ¶ 177 ("[I]n an effort to spur sales in the United States, Volkswagen proudly touted the performance and reliability of its diesel vehicles and its purported environmental leadership . . . .").) Fewer than 3% of such vehicles in the United States were sold or leased in Massachusetts.  (*See id.* ¶ 43 (about 15,000 of the roughly 600,000 such vehicles sold or leased in the U.S. were sold or leased in Massachusetts).)

Plaintiffs across the nation have already filed more than 1,100 actions against some or all of the Defendants based on similar allegations and theories.  These actions include numerous individual and class actions, as well as actions filed by federal, state and other governmental bodies, including the Attorneys General of California, New Mexico and Kentucky.  All three of those Attorney General actions are currently pending in the MDL in federal court in the Northern District of California.[2]

On December 8, 2015, the JPML issued an order transferring hundreds of actions then pending to the MDL for coordinated and/or consolidated pre-trial proceedings.  In its order, the JPML stated "the actions in this litigation involve common questions of fact, and centralization in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."  *In re Volkswagen "Clean Diesel"*

---

[2]     Although certain actions brought by State Attorney Generals have been remanded to state court, they have no bearing on the issues here.  Even putting aside whether it was correctly decided, *Lougy* v. *Volkswagen Group of America, Inc.*, 2016 WL 3067686 (D.N.J. May 19, 2016), did not address whether federal question jurisdiction would be implicated if New Jersey sought to enforce procedures and penalties differing from California's in contravention of the federal CAA.  An Arizona district court also remanded an action brought by the Arizona Attorney General, but that action concerned claims brought under consumer protection statutes and the Court's conclusion that "Arizona could prevail even if the federal law, regulation and standards had never existed" does not apply here where Section 177 of the CAA provides the predicate for Plaintiffs' claims.  *See Brnovich* v. *Volkswagen AG*, No. 2:16-cv-01426, Dkt. No. 35, at 5 (D. Ariz. June 23, 2016).

*Mktg., Sales Practices, & Prods. Liab. Litig.*, 148 F. Supp. 3d at 1368.   Subsequently filed actions have also been transferred to the MDL.   *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 15-md-02672, Dkt. No. 1716 (J.P.M.L. June 2, 2016). Among other cases, the JPML transferred to the MDL an action by the State of New Mexico, despite New Mexico's pending motion for remand, because the state's action was "based upon the core factual questions of [the MDL]—VW's conduct in installing defeat devices in over 500,000 of its diesel vehicles."   *Id.* at 2.   As the JPML held, "[g]iven the overlapping factual issues and the potential for inconsistent or duplicative rulings on common issues, transfer is appropriate."   *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 15-md-02672, Dkt. No. 1949 at 2 (J.P.M.L. Aug. 5, 2016) (transferring action by the Commonwealth of Kentucky to the MDL).

Concurrent with the filing of this Notice of Removal, Defendants are seeking the transfer of this Action to the MDL in the Northern District of California.   As discussed above, Plaintiff has agreed not to object to the transfer of this Action—and the other States that have brought their own actions have likewise agreed not to object to the transfer of those actions—so that any and all remand motions in these cases can be collectively determined by the MDL Court, reducing, if not eliminating, the risk of inconsistent conclusions on these novel and substantial questions of federal law.   This approach should ensure consistency with the adjudication of many other dismissal and remand motions raising similar arguments and stemming from the same set of allegations.   *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 15-md-02672, Dkt. No. 1716 at 2 (J.P.M.L. June 2, 2016) ("The transferee judge can decide [New Mexico's] motion to remand, as in other cases.").   Judge Breyer has ordered that "any motion for remand for actions . . . transferred to, or removed to, [the] Court [will be

considered in a coordinated and orderly fashion after the final approval hearing [in October 2016] regarding the Class Action Settlement Agreement." *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 3:15-md-02672-CRB, Dkt. No. 1643 at 1-2 (N.D. Cal. July 7, 2016).[3]

## II.    BASIS OF FEDERAL QUESTION JURISDICTION

This action arises under federal law within the meaning of 28 U.S.C. § 1331 and falls within the original federal question jurisdiction of the federal courts.

Notwithstanding that a complaint may be styled as arising under state law, federal courts look to whether the claim raises "a substantial question of federal law" to determine whether federal jurisdiction exists. *See Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983) ("Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court . . . cases in which . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."); *see also*, *e.g.*, 13D Wright *et al.*, *supra* § 3562 (courts may "look beyond the law that created the claim being asserted to view the litigation reality in assessing whether there is a need for federal question jurisdiction").

---

[3]      The Class Action Settlement is a settlement between Defendants and the owners and/or lessees of certain Volkswagen vehicles for which the MDL Court granted preliminary approval on July 26, 2016.  Under the Class Action Settlement and related settlements with the U.S. Federal Trade Commission, the U.S. Department of Justice, the U.S. Environmental Protection Agency, and the California Air Resources Board, Volkswagen will (i) create a $10.033 billion funding pool from which to compensate certain current and former owners and lessees of affected vehicles, (ii) pay $2.7 billion to fully remediate any excess emissions from the affected vehicles, and (iii) make an additional $2.0 billion in green investments.  A final fairness hearing is scheduled for October 18, 2016.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 3:15-md-02672-CRB, Dkt. No. 1698 (N.D. Cal. July 29, 2016).  Separately, Defendants have entered in a settlement agreement with Massachusetts and 42 other states and jurisdictions resolving certain of their claims, including for penalties under consumer protection laws.

The Supreme Court has long emphasized the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312; *see also City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997) ("[e]ven though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States" if "right to relief under state law requires resolution of a substantial question of federal law" (quoting *Franchise Tax Bd. of Cal.*, 463 U.S. at 13)). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 133 S.Ct. 1059, 1065 (2013).

That standard is fully met here. The federal issues here are necessarily raised and substantial. As the Supreme Court recently reaffirmed, federal question jurisdiction is warranted when "a suit raising a state-law claim rises or falls on the plaintiff's ability to prove the violation of a federal duty." *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Manning*, 136 S. Ct. 1562, 1569 (2016). Courts have recognized, for example, that where "resolution of the dispute requires the interpretation and application of the [federal statute] to the contractual arrangement between the parties," it "is undoubtedly a federal question and . . . sufficiently substantial to justify invocation of federal-question jurisdiction." *Ormet Corp.* v. *Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996).

*Ormet*, like this matter, involved state law claims requiring interpretation of the CAA. In reversing the district court and finding federal question jurisdiction, the Fourth Circuit recognized that "[w]here the resolution of a federal issue in a state-law cause of action could,

because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts."  *Id.*[4]

The federal interests here are even more substantial than in *Ormet*.  The core emissions issues on which Plaintiff predicates its claims are the subject of intense federal enforcement and federal litigation.  When rejecting the Commonwealth of Kentucky's objections to transfer of its action to the MDL, the JPML recognized the importance of those issues being resolved in one forum, including to avoid inconsistent adjudications on matters of federal law under the CAA's scheme:

> At its core, the action [to be transferred to the Northern District of California] is based upon the common factual questions of MDL No. 2672—VW's conduct in installing defeat devices in over 500,000 of its diesel vehicles.  Allowing this case to proceed separately would require a duplicative, and potentially inconsistent, decision on the core issue of VW's liability for the installation of the defeat devices.

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 15-md-02672, Dkt. No. 1949 at 2 (J.P.M.L. Aug. 5, 2016).

As discussed below, the federal CAA broadly prohibits states (other than California) from adopting or attempting to enforce *any* standards for emissions of new vehicles, unless states

---

[4]      Numerous courts have similarly recognized that federal question jurisdiction is implicated where state law claims require interpretation and application of a significant federal law issue.  *See, e.g.*, *West Virginia* v. *Eli Lilly & Co.,* 476 F. Supp. 2d 230, 232 (E.D.N.Y. 2007) ("Federal question jurisdiction lies over claims that may sound in state law but implicate significant federal issues."); *Lehman Bros., Inc.* v. *City of Lodi*, 333 F. Supp. 2d 895, 906 (E.D. Cal. 2004) (denying remand where plaintiff's "contract-related claims have 'artfully pleaded' a federal question as state law claims"); *Menoken* v. *McNamara*, 213 F.R.D. 193, 197 (D.N.J. 2003) ("Because proof of a meritorious federal claim is an essential element of proximate causation and damages for each of his claims, the plaintiff's complaint presented a federal question . . . ."); *Chance* v. *Sullivan*, 993 F. Supp. 565, 567 (S.D. Tex. 1998) ("[T]he state claims are inescapably infused with . . . overriding federal concerns.").

adopt and enforce standards *identical* to the EPA-approved California standards.  42 U.S.C. §§ 7507, 7543(a).  Although Massachusetts has adopted California's standards for emissions of $NO_x$ (oxides of nitrogen) (Compl. ¶ 236), the Complaint nowhere alleges that Massachusetts' enforcement or penalty schemes are identical to California's.  That omission is no accident: notwithstanding the unequivocal mandate of the CAA, the enforcement scheme advocated by Massachusetts is not identical to California's.

Plaintiff alleges that "defeat devices" were installed in certain diesel vehicles Defendants sold in the U.S. market, which allegedly "defrauded the public and state and federal regulators." (Compl ¶ 2; *see, e.g.*, *id.* ¶ 98 ("Volkswagen, Audi, and Porsche [sold diesel vehicles] onto the American market from the 2009 through 2016 model years, all of which featured undisclosed and illegal defeat devices.").)  According to the Complaint, "by causing through the use of the defeat devices the emission of air contaminants to the ambient air from each of the Subject Vehicles in amounts exceeding the Commonwealth's NOx emissions," Defendants violated Massachusetts' environmental regulations.  (*Id.* ¶ 260.)

The Complaint brings six claims for violations of the Massachusetts Air Act and the Air Regulations.[5]  Plaintiff seeks to recover penalties that far exceed the penalties permissible under California law.  *Compare* Cal. Health & Safety Code § 43211 (subjecting manufacturers to civil penalty of $5,000 per vehicle that is sold in California "that does not meet the emission standards

---

[5]      Specifically, the Complaint alleges violations of: (i) Massachusetts laws prohibiting the use of defeat devices (Compl. ¶¶ 253-60 (Count I)); (ii) Massachusetts emission standards (*id.* ¶¶ 261-64 (Count II)); (iii) Massachusetts laws prohibiting false submissions to the Department of Environmental Protection (*id.* ¶¶ 265-75 (Count III)); (iv) Massachusetts laws prohibiting misrepresentations of CARB executive orders (*id.* ¶¶ 276-79 (Count IV)); (v) anti-tampering provisions of Massachusetts laws (*id.* ¶¶ 280-93 (Count V)); and (vi) Massachusetts laws prohibiting a civil conspiracy to violate environmental laws and regulations (*id.* ¶¶ 294-97 (Count VI)).

adopted by [CARB]") *with* Compl., Prayer for Relief, ¶ C (seeking, under Mass. Gen. Laws Ann. Ch. 111, §§ 142A-142O, a civil penalty of $25,000 for each day of each "violation" of Massachusetts law, plus additional fines).

Plaintiff concedes that Defendants have been working with the EPA and California under the supervision of the MDL court to fix any vehicles that may contain defeat devices, to mitigate the environmental impact of $NO_x$ emissions, and to promote zero-emission vehicles.  (*See* Compl. ¶¶ 231-32.)  Nonetheless, Plaintiff seeks injunctive relief that would overlap with these efforts and inject Massachusetts regulators and courts into the design of Defendants' vehicles in the future.  Specifically, the Complaint seeks a permanent injunction barring Defendants from:

> i.    Selling, offering for sale, introducing into commerce, or delivering for introduction into commerce into the Commonwealth any new motor vehicle equipped with a defeat device or any new motor vehicle not eligible for sale pursuant to emissions and environmental standards in the Commonwealth;
>
> ii.   Bypassing, defeating, or rendering inoperative any device or element of design installed on or in a new motor vehicle in compliance with emissions and environmental standards in the Commonwealth; and
>
> iii. Submitting or causing to be submitted false or misleading certifications to the [Department of Environmental Protection].

(Compl., Prayer for Relief, ¶ A.)  The Complaint also seeks an order requiring Defendants to appoint a "monitor overseen by the [state] Court to ensure Volkswagen's future compliance with emissions and environmental standards in the Commonwealth."  (Compl., Prayer for Relief, ¶ B.)

Defendants are aware of no precedent for a state (other than California) to impose monetary penalties or other remedies for violations of state new-vehicle emission standards. Permitting this action, and parallel actions filed by other states, to proceed in state courts would lead to a patchwork regulatory regime that is the antithesis of the CAA's carefully delineated

scheme.  This lawsuit thus presents substantial federal questions concerning the scope of the CAA that should be resolved once, in federal court.

      A.      **THE FEDERAL STATUTORY SCHEME**

Federal law provides distinct roles for the federal government and for the states in fighting air pollution.  The federal "CAA contemplated that the states would carry out their responsibility chiefly by regulating stationary sources, such as factories and power plants." *Engine Mfrs. Ass'n* v. *EPA*, 88 F.3d 1075, 1078-79 (D.C. Cir. 1996).  But "[i]n contrast to federally encouraged state control over stationary sources, regulation of motor vehicle emissions ha[s] been a principally federal project." *Id*. at 1079.  "The regulatory difference is explained in part by the difficulty of subjecting motor vehicles, which readily move across state boundaries, to control by individual states." *Id.*  Perhaps more importantly, "the possibility of 50 different state regulatory regimes 'raised the spectre of an anarchic patchwork of federal and state regulatory programs, a prospect which threatened to create nightmares for the manufacturers.'" *Id.* (quoting *Motor & Equip. Mfrs. Ass'n* v. *EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979)).

Congress "expressed its intent to occupy the regulatory role over emissions control to the exclusion of all the states . . . except California." *Motor & Equip. Mfrs. Ass'n*, 627 F.2d at 1109. Specifically, Section 209 of the CAA prohibits states and political subdivisions thereof from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines" and from "requir[ing] certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor engine."  42 U.S.C. § 7543(a).

As a widely respected appellate court in New York has recognized, Section 209 "was intended to have a broad preemptive effect" and to foreclose state-law claims "*relating to*" emissions by new vehicles. *E.g*., *In re Applications to Quash Subpoenas Duces Tecum Issued by*

*the Office of the Attorney Gen. of the State of N.Y.*, 709 N.Y.S.2d 1, 8-10 (N.Y. App. Div. 1st Dep't 2000) (emphasis original) (New York cannot bring common-law claims based on violations of emissions standards, or "provid[e] their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by [the CAA]"). The "clear and undisputed intent of Congress" was to create a uniform federal scheme thereby "avoiding a chaotic situation from developing where vehicle manufacturers would be subject to 50 different sets of requirements relating to emissions controls." *Id.* at 9 (alterations, citations, and internal quotation marks omitted).

The CAA creates only one exception to total federal control: California may adopt its own standards and enforcement procedures *if* the EPA "determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards." 42 U.S.C. § 7543(b)(1). Thus, the EPA must review and authorize California's proposed standards and enforcement procedures to ensure that they are not arbitrary and capricious and are consistent with federal law. 42 U.S.C. § 7543(b)(1)(A)-(C) (EPA will not authorize California emissions standards if: "(A) the determination of [California] is arbitrary and capricious, (B) [California] does not need such State standards to meet compelling and extraordinary conditions, or (C) [California] standards and accompanying enforcement procedures are not consistent with" the CAA.). Because of this review and approval process, "once EPA issues a waiver for a California emissions standard, it becomes a motor vehicle standard of the government, with the same stature as a federal regulation." *Green Mtn. Chrysler Plymouth Dodge Jeep* v. *Crombie*, 508 F. Supp. 2d 295, 347 (D. Vt. 2007) (noting that Congress "could not have intended that an EPA-approved emissions reduction regulation did not have the force of a federal regulation").

-16-

Congress slightly relaxed its strict "all but California are preempted" rule by enacting Section 177 of the CAA, 42 U.S.C. § 7507.  Under Section 177, *if* the EPA grants a waiver with respect to certain California standards, then other states may adopt and enforce standards "identical" to the EPA-approved California standards.  42 U.S.C. § 7507.  But such states cannot adopt or enforce non-"identical" emission standards, "prohibit or limit, directly or indirectly, the manufacture or sale of a new motor vehicle . . . certified in California as meeting California standards, or take any action of any kind to create, or have the effect of creating, a motor vehicle . . . different than a motor vehicle . . . certified in California under California standards (a 'third vehicle') or otherwise create such a 'third vehicle.'"  *Id.*

The terms "standards," "enforcement procedures," and "enforce" in the CAA have particular meanings.  As the Supreme Court has explained, "the standards themselves are separate from [the] enforcement techniques," and "the distinction between standards and accompanying enforcement procedures is a meaningful one."  *Engine Mfrs. Assn* v. *S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253 (2004); *Motor & Equipment Mfrs. Ass'n*, 627 F.2d at 1113.  The word "standards" in Section 209 of the CAA means "quantitative levels of emissions," while "enforcement procedures" refer to "regulations involving certification or in-use maintenance restrictions."  *Motor & Equipment Mfrs. Ass'n,* 627 F.2d at 1112.  And, an "'attempt to enforce' a 'standard'" is a "command, accompanied by sanctions," that vehicles with particular emissions characteristics not be purchased or sold.  *Engine Mfrs. Ass'n,* 541 U.S. at 255; *see also*, *e.g.*, *In re Applications to Quash Subpoenas Duces Tecum Issued by the Office of the Attorney Gen. of the State of N.Y.*, 709 N.Y.S.2d at 10 (under Section 209 of the CAA, states may not "provid[e] their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by Federal [emissions] law").

**B.**    **THE CALIFORNIA SCHEME AND THE NON-IDENTICAL MASSACHUSETTS SCHEME**

California has implemented a regime of standards and enforcement procedures concerning new vehicle emissions. Among other things, the standards set by the California Air Resources Board ("CARB") provide limits for the release of certain pollutants, such as $NO_x$, by new vehicles. (*See* Compl. ¶ 236; *see generally* CAL. CODE REGS. ("CCR") tit. 13, § 1900 *et seq.*) CARB "enforcement" regulations relate to the testing and inspection of new vehicles and authorize CARB to order a recall to correct emissions defects. *See generally* CCR tit. 13, §§ 2100 – 2110 ("Enforcement of New and in-Use Vehicle Standards"); CCR tit. 13, § 2101 (authorizing emissions-compliance testing of new vehicles, and empowering CARB to "invoke Section 2109" if violations are discovered); CCR tit. 13, § 2109 (authorizing commissioner to order recalls of non-compliant vehicles).

Massachusetts generally adopts California's new-car emissions "standards" by reference. (*See* Compl. ¶ 236; 13 C.C.R. § 1961(d), 13 C.C.R. § 1961.2(d).) However, Massachusetts now purports to impose its own enforcement procedures and penalties. (*See* Compl. ¶¶ 250-51; Mass. Gen. Laws Ann. Ch. 111, §§ 142A, 142M(f), 142K(e).)

Massachusetts' penalties for violating new-car emissions standards radically differ from California's. California law subjects manufacturers to a civil penalty of $5,000 per vehicle that is sold in California "that does not meet the emission standards adopted by [CARB]." Cal. Health & Safety Code § 43211. By contrast, the Complaint seeks to impose far greater money penalties under Massachusetts' general law governing all air-pollution violations (both stationary-source and mobile-source). (*See* Compl., Prayer for Relief, ¶ C (seeking civil penalties of $25,000 for each day of violation.))

-18-

Massachusetts law also purports to authorize the Attorney General to seek "an injunctive relief" for "any . . . violation" of Massachusetts' air-pollution laws or regulations.  Mass. Gen. Laws Ann. Ch. 111, §§ 142A, 142M(f).  In this action, Massachusetts seeks broad injunctive relief that would inject Massachusetts agencies and courts into the design of Defendants' vehicles.   (Compl., Prayer for Relief, ¶¶ A-B (seeking permanent injunctions prohibiting "rendering inoperative any device or element of design installed on or in a new motor vehicle in compliance with emissions and environmental standards in the Commonwealth" and an order appointing a "third-party monitor overseen by the Court" to oversee emissions-control systems in Defendants' vehicles).)

### C.   THE STATE'S CLAIMS TURN ON SUBSTANTIAL, DISPUTED ISSUES OF FEDERAL LAW THAT HAVE NATIONAL CONSEQUENCE.

Although the Plaintiff dresses its claims for relief in the garb of state law, courts look past the nominal cause of action to the litigation realities and when deciding whether federal question jurisdiction exists.   *Federated Dep't Stores, Inc.* v. *Moitie*, 452 U.S. 394, 397 n.2 (1981) (removal of actions alleging "state-law claims" proper because "claims had a sufficient federal character").   As the Supreme Court has explained, "federal jurisdiction over a state law claim will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 133 S. Ct. at 1065.  Under this standard, federal jurisdiction is properly found here.

### 1.   The Relief Sought by the Complaint Necessarily Raises Substantial and Disputed Questions About the Scope and Application of the Federal CAA.

The relief sought by the Complaint depends upon, and otherwise implicates, questions of federal law.   Although the Commonwealth has formally adopted California's emission

"standards," Plaintiff here seeks to employ enforcement procedures and penalties and demand injunctive relief that substantially differ from those implemented by California.  Determining whether and to what extent this relief can be granted, consistent with federal law (in particular, Section 177 of the CAA), would necessarily entangle a Massachusetts state court in questions concerning the interpretation and scope of the federal regulatory scheme implemented by the EPA under the CAA.

The CAA does not—and was never intended to—authorize states other than California to bring enforcement actions or to impose penalties under their own idiosyncratic laws.  The CAA prohibits states from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles," 42 U.S.C. § 7543(a), making clear that the "regulation of motor vehicle emissions . . . [is] principally [a] federal project."  *Engine Mfrs*, 88 F.3d at 1079.  In 1977, the CAA was amended to allow states to adopt and enforce emission standards for new motor vehicles—so long as those "standards are *identical* to the California standards for which a waiver has been granted for such model year."  42 U.S.C. § 7507 (emphasis added).  The legislative history of this provision explains that this provision was intended only to

> Authorize . . . [states to] adopt and enforce new motor vehicle emission standards which are identical to California's standards. . . .  [S]trict limits are applied . . . .  The provision is *not* intended to allow States, other than California, to require additional new vehicle certification testing or *enforcement procedures* since such *testing and enforcement will be conducted under Federal and California laws*.

H.R. Rep. 95-294, at 310-11 (1977) (emphasis added).

The Massachusetts enforcement scheme invoked by the Complaint is not "identical" to California's.  *See* Section II.B, *supra.*  Far from it.  For example, under California law, manufacturers that sell new vehicles that violate EPA-approved California emission standards

are subject to a civil penalty of $5,000 "for each such action."  Cal. Health & Safety Code §
43211.  By contrast, the Complaint relies on a generic Massachusetts statute covering *all* air
pollution violations (including pollution from stationary sources) to demand penalties up to
$25,000 per day of violation—*five times* more than the penalty permissible under EPA-approved
California law.  (*See* Compl., Prayer for Relief, ¶ C; Mass. Gen. Laws Ann. Ch. 111, §§ 142A-
142O.)  Whether Massachusetts can lawfully apply its own state-law enforcement mechanisms,
and impose its own state-law penalties that differ substantially from California's, presents federal
questions about the scope of Section 177 of the CAA.  Permitting Massachusetts to adopt
California emission standards but impose its own enforcement procedures and penalties "would
conflict with the careful framework Congress adopted."  *Arizona* v. *United States*, 132 S. Ct.
2492, 2502 (2012).  The Supreme "Court has recognized that a 'conflict in technique can be fully
as disruptive to the system Congress enacted as conflict in overt policy.'"  *Id.* at 2505 (quoting
*Amalg. Ass'n of St., Elec. Ry. & Motor Coach Emp.* v. *Lockridge*, 403 U.S. 274, 287 (1971)).
The "range and nature of those remedies that are and are not available is a fundamental part" of
the comprehensive system established by Congress.  *Lockridge*, 403 U.S. at 287; *see, e.g.*, *In re
Applications to Quash Subpoenas Duces Tecum Issued by the Office of the Attorney Gen. of the
State of N.Y.*, 709 N.Y.S.2d at 10 (states cannot impose their own incremental penalties for
violations of federal emissions standards, or "provid[e] their own regulatory or judicial remedies
for conduct prohibited or arguably prohibited by" the CAA).

The equitable relief sought by the Complaint also implicates federal law, because it
would permanently inject the Commonwealth of Massachusetts—and Massachusetts state
courts—into directing and supervising the future design of Defendants' vehicles, effectively
imposing Massachusetts standards throughout the United States.  This plainly contravenes

Congress' intent:  Congress created a uniform federal regulatory scheme because it recognized "the difficulty of subjecting motor vehicles, which readily move across state boundaries, to control by individual states."   *Engine Mfrs*, 88 F.3d at 1079.   The Complaint seeks to permanently enjoin Defendants from violating "emissions and environmental standards in the Commonwealth," an order of abatement and mitigation of emissions "in excess of applicable emission standards," and to appoint a "third-party monitor overseen by the [state] Court" to "ensure Defendants' future compliance with emissions and environmental standards in the Commonwealth."  (Compl., Prayer for Relief, ¶¶ A-B.)  The Complaint also seeks to enjoin "rendering inoperative" any "element of design installed on or in a new motor vehicle in compliance with emissions and environmental standards in the Commonwealth."  (*Id.* ¶ A.)   But Section 177 of the CAA precludes states (other than California) from "prohibit[ing] or limit[ing], directly or indirectly," the manufacture or sale of vehicles certified by California or "tak[ing] any action of any kind to create, or have the effect of creating, a motor vehicle . . . different than a motor vehicle . . . certified in California."  42 U.S.C. § 7507.

Whether the injunction and appointment of a Massachusetts State "monitor" would violate Section 177 presents a substantial federal question.  *See*, *e.g.*, *Provident Life & Acc. Ins. Co.* v. *Waller*, 906 F.2d 985, 988 (4th Cir. 1990) ("facts alleged in the complaint and *the relief requested* demonstrate the existence of a substantial federal question") (emphasis added); *Air Prods. & Chems., Inc.* v. *Reichhold Chems., Inc*., 755 F.2d 1559, 1562 (Fed. Cir. 1985) (finding federal question subject matter jurisdiction based on "the pleadings . . . , *in particular the relief requested*") (emphasis added); *see also DeCarlo* v. *Archie Comic Publ., Inc.*, 11 F. App'x 26, 29 (2d Cir. 2001) ("'When a complaint . . . seeks a remedy [governed by federal law], federal jurisdiction is properly invoked.'") (quoting *Bassett* v. *Mashantucket Pequot Tribe*, 204 F.3d

343, 355 (2d Cir. 2000)).   Indeed, the proposed "monitor" would have authority "to ensure Defendants' future compliance with emissions and environmental standards in the Commonwealth" wholly untethered from the EPA-approved enforcement scheme in California. (Compl., Prayer for Relief ¶  B.)

> 2.     **Resolution of Plaintiff's State Law Claims Necessarily Entails Answering Substantial Federal Questions About Compliance with Federally Approved Emissions Standards.**

As described in Section I.C *supra*, the *sine qua non* of Plaintiff's claims is that the vehicles identified in the Complaint produced emissions in excess of Massachusetts' emissions standards, and these vehicles were equipped with "defeat devices"—a term defined *only* by federal law, *see* 40 C.F.R. § 86.1803-01 (defining "defeat device")—that impeded the discovery of these excess emissions.   Because Massachusetts adopted by reference California's emissions regulations, determining whether Defendants' vehicles violated Massachusetts law, and the legal consequences for any such violation, will require the Court to construe California's emissions regulations.   This will necessarily implicate federal questions, because California emissions regulations are reviewed and approved by the EPA and have the "stature" and "force of a federal regulation." *Green Mtn.*, 508 F. Supp. 2d at 347.   Accordingly, Plaintiff cannot avoid, for example, the federal question of whether Defendants' vehicles violated federally approved emissions standards, or the separate federal question of the consequences of the vehicles containing unlawful "defeat devices," by cloaking its allegations in state-law terms.   *See Hughes* v. *Chevron Phillips Chem. Co. LP*, 478 F. App'x 167, 171 (5th Cir. 2012) (a plaintiff cannot "defeat removal by omitting to plead necessary federal questions") (quoting *Franchise Tax Bd. of Cal.*, 463 U.S. at 22); *cf., e.g.*, Compl. ¶¶ 269-271, 275, 279 (alleging that defendants "fraudulently" obtained California certifications upon which Massachusetts relied and violated state regulations).

Federal question jurisdiction exists where, as here, a state-law claim depends upon the interpretation or application of federal law.  *See, e.g.*, *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 314-15 (federal question jurisdiction existed where validity of notice by IRS was an "essential element of [state-law] quiet title action"); *R.I. Fishermen's Alliance, Inc.* v. *R.I. Dep't of Envtl. Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009) (federal question jurisdiction exists where "answering the state-law question . . . necessarily entails answering the embedded federal question"); *Ormet*, 98 F.3d at 807 (exercise of federal jurisdiction proper where plaintiff's state-law contract claim depended on meaning of term "owner" under Clean Air Act); *League to Save Lake Tahoe* v. *B.J.K. Corp.*, 547 F.2d 1072, 1074 (9th Cir. 1976) (federal court had jurisdiction over state claim alleging violation of county building code where meaning of federal regulation was implicated); *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77, 80 (D. Mass. 2006) (removal proper where resolution of state-law claims turned on definition of "average wholesale price" in federal regulations).

> **3.    The Federal Questions Raised in the Complaint Are Substantial and Capable of Resolution in Federal Court Without Disrupting the Federal State Balance Contemplated by the CAA.**

Finally, there is a substantial federal interest in *uniformly* resolving the important issues surrounding Defendants' alleged misconduct, alleged violations of state and federal environmental laws, and the appropriate remedy for those violations.  These disputed federal questions are necessarily raised in the Complaint.  The federal questions raised in the State's Complaint are also substantial because they "implicate significant federal issues."  *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 312.

Not only are these issues "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," *Gunn*, 133 S. Ct. at 1065, but resolving these issues in federal court better protects the balance than piecemeal litigation in state courts.

Because multiple states (including New York, Maryland, Massachusetts and Pennsylvania) have adopted California's regulations pursuant to Section 177 of the CAA, a situation in which courts in each state provide their own interpretations of these regulations creates the likelihood of varying or inconsistent interpretation—precisely the sort of "anarchic patchwork" of state and federal regulation that the CAA seeks to avoid. *Motor & Equip. Mfrs. Ass'n*, 627 F.2d at 1109. Indeed, it is to avoid this result that Defendants are removing all of the State Actions.

The need for uniformity in addressing these questions is acute, as evidenced by the fact that this emissions-related controversy has resulted in hundreds of lawsuits filed across the country now coordinated in the MDL, and proposed substantial nationwide settlements under the supervision of the MDL court. (*See* Compl. ¶¶ 231-32.) Only a fraction of the vehicles that Defendants sold or leased in the United States were sold or leased in the Commonwealth. (*See*, *e.g.*, *id.* ¶ 43 (approximately 15,000 of the roughly 600,000 at-issue vehicles sold or leased in the United States were "sold or leased in Massachusetts").) "Where the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts." *Ormet*, 98 F.3d at 807.[6]

---

[6]     It is axiomatic that where federal question jurisdiction exists over any one of the claims in a removed action, the Court possesses federal jurisdiction over the case as a whole. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *Int'l Coll. of Surgeons*, 522 U.S. at 165 ("Here, once the case was removed, the District Court had original jurisdiction over ICS' claims arising under federal law, and thus could exercise supplemental jurisdiction over the accompanying state law claims so long as those claims constitute 'other claims that . . . form part of the same case or controversy.'") (quoting 28 U.S.C. § 1367(a)). Because at least some, if not

WHEREFORE, the case now pending in the Superior Court of the Commonwealth of Massachusetts, Suffolk County, Docket No. 16-2266D, is hereby removed to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446.

Dated:  August 18, 2016

Respectfully submitted,

By:     /s/ John D. Donovan, Jr.
        John D. Donovan, Jr. (BBO # 130950)
        John.Donovan@ropesgray.com
        ROPES & GRAY LLP
        800 Boylston Street
        Boston, Massachusetts 02199-3600
        Tel: (617) 951-7000
        Fax: (617) 951-7050

        *Of Counsel*

        Robert J. Giuffra, Jr.
        Sharon L. Nelles
        David M.J. Rein
        William B. Monahan
        SULLIVAN & CROMWELL LLP
        125 Broad Street
        New York, New York 10004-2498
        Tel: (212) 558-4000
        Fax: (212) 558-3588

        *Counsel for Defendants Volkswagen AG, Audi AG, and Volkswagen Group of America, Inc.*

---

all, of Plaintiff's claims and pleas for relief raise substantial federal questions, this entire case is removable.

By:     /s/ J. William Codinha
        J. William Codinha (BBO # 087740)
        (*jcodinha@nixonpeabody.com*)
        Samuel Goldblatt (BBO # 671376)
        (*sgoldblatt@nixonpeabody.com*)
        NIXON PEABODY LLP
        100 Summer Street
        Boston, MA 02110-2131
        Tel: (617) 345-1000
        Fax: (617) 345-1300


        *Of Counsel*


        Joseph Eisert (*pro hac vice* to be filed)
        Alexander K. Haas (*pro hac vice* to be filed)
        KING & SPALDING LLP
        1700 Pennsylvania Ave., Ste. 200
        Washington, DC 20006
        Tel: (202) 626-5522
        Fax: (202) 626-3737

        *Counsel for Defendants Dr. Ing. h.c.F. Porsche AG
        and Porsche Cars North America, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document was served upon all counsel of record via electronic mail and U.S. mail on August 18, 2016.

/s/ John D. Donovan